We'll hear Padilla v. Yeshiva University Good morning. May it please the Court, Stephen Bergstein for the Plaintiff's Appellants. The District Court improperly granted Rule 12 relief to the defendants in this FMLA retaliation claim which sufficiently alleges a prima facie case of retaliation for both plaintiffs. There is also a cause of action under the City Human Rights Law for disability discrimination. There are several reasons why the complaint satisfies Rule 12 and this Court's standards under Littlejohn and Vega. Number one, the timing of their terminations. Shortly after both plaintiffs sought and received family medical leave, they were terminated. And for the three-week period and for Padilla, it was five or six weeks. And under Littlejohn and under Vega, that was enough to state a cause of action for retaliation under the Federal Civil Rights Laws. In addition to that, there is evidence set forth in... I'm just, to clarify, they were, the timing was three weeks or five or six weeks? Well... From what to what? Amado requested FMLA on March 31, 2015 and he was fired April 21, 2015. In between that time period, he received family medical leave and... I thought the request wasn't granted until April 17th. Correct. But that was in between the time he requested and until he was fired, the request was granted along the way. And same with Padilla. They weren't granted the same day they requested, but it was close enough under the cases to set out a pronophasia case. In addition to that, we have some hostility by management toward the plaintiff's disability. The complaint alleges that when they requested disability-related leave in the past, a Yeshiva associate director had expressed hostility for this. Defendant argues that they did receive FMLA or disability leave in the past. That doesn't mean that they can't be fired for that in the future. At some point, you can plausibly assert that management is fed up with these requests because it causes administrative problems when you're juggling schedules. Thirdly, there's evidence or there's an allegation in the complaint of disparate treatment. The plaintiffs were both Carpenter Mechanic III. Other Carpenter Mechanic IIIs were retained. The defendant argues that the complaint provides no information as to the comparables or the other Carpenters who were retained instead, and so it's impossible to evaluate the argument. That level of detail is not in the complaint. We don't know who the other Carpenter Mechanics were other than setting forth in the complaint that there were, in fact, less senior Carpenter Mechanics who were retained when the plaintiffs were terminated. The defendants argue— Why isn't that just a conclusory assertion? I mean, if you're saying you don't know who they were, how do you know that they existed even? Well, it's not a summary judgment motion. I mean, we know they existed because the complaint says that there were comparables who were not terminated. As you may know, I didn't write the complaint. If I were to write the complaint, I would have the names there. I'm The defendant primarily argues that this complaint does not state a claim because there was a reduction in force. I don't think reduction in force is an argument you can make on a Rule 12 motion unless the complaint itself concedes that there was a good-faith reduction in force. We don't concede that. There are documents attached to defendant's motion that lay out some of the terms of the reduction in force. That's not properly before the court on a Rule 12 motion because they're not integral to the allegations in the complaint. We make the same arguments for the plaintiffs with respect to the disability discrimination claim under the city law. Each plaintiff has a disability. They were terminated while they were out on leave. The First Department under the city law says close temporal proximity to protected activity is enough to make that a claim under the city law. For these reasons, it's not that complicated. This complaint states a cause of action under the Family Medical Leave Act and the New York City Human Rights Law. Thank you. All right. Any other side? Thank you, Your Honor. May it please the Court. Dov Kesselman of Syed Farth Shaw on behalf of Apelli Yeshiva University. Your Honor, as both know, as having drafted many of the seminal decisions on the issue of Iqbal Twombly and discrimination cases in Little John and in Anderson News and Vega, there's no dispute about what the standards are. There's no question at all that a court cannot dismiss a complaint because it disbelieves factual allegations. That's not what's at issue here. What's at issue here is that there is a failure to allege facts, non-conclusory facts, that can bring this claim from pure supposition, from pure conjecture into reality. What's conclusory and what's not? I mean, there is an assertion that other carpenters were retained. We don't know their names, but is that a conclusory assertion? I mean, do we ignore that? Without any facts, it is. It is a conclusory assertion. I can't simply just say that, you know, there were other people out there. There must have been. There has to be. In fact, Mr. Amato in his affidavit... They don't allege that there must have been. They allege flat out that there were others. They also allege that they tried to exercise their bumping rights, which certainly implies that they believe they had bumping rights and the ability to bump junior employees. Is that conclusory? That is not conclusory, I would argue, but I would suggest to you the question is, the conclusory, a very obvious conclusory allegation that's made in the complaint, is that we were fired because of our exercising FMLA rights. In fact, it's even conclusive to say they got fed up. They got fed up. Without a single allegation, by the way, of anything. Here's the key here, if you don't mind. What's happening here is that there are allegations in the complaint, in the complaint itself. I'm not asking the court to consider other things. Your honors know well that we cannot consider facts outside the complaint, but in the complaint, and if you look at the reply, it's very interesting. The appellants say, here are the facts. They asked for leave in March of 2015. They were terminated on April 21 of 2015, and there was a supervisor that had made comments in the past along the way about their FMLA leave, and that's sufficient to show it. But the complaint itself, and here's why a judge is not a potted plant, your honor, Judge Chin, in the Vega decision, actually asked the question, so how do I determine plausibility? It's sort of helpful, it's okay, it's possible, conceivable is not enough. Plausible is what it must be, and Judge Chin, you said that, A, there's three elements to that. You must precede factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. Number two, the court is to draw on his judicial experience and common sense. And three, to know that plausibility is not a probability standard. The facts... Any one of them undoubtedly would not be enough, but they allege the timing. They were terminated shortly after they were granted FMLA leave. They allege less junior colleagues were allowed to stay who had not exercised FMLA rights. They allege they were denied bumping rights when they were entitled to them. They allege hostility. Looking at those things together, do they not paint a plausible mosaic of retaliation? They do not, and here's why. Because the complaint also alleges the following. They allege that these two plaintiffs were here for 15 and 27 years. Each of them were there for 15 and 27 years. The complaint alleges that throughout that time, throughout that time, they had been taking FMLA leaves. Throughout that time, this supervisor had made comments about them taking sick leave. And there's no allegation, because it never happened, that they were ever denied. In fact, the complaint says, in the past, they had been granted those FMLA leaves. And they were granted this FMLA leave now. And the complaint alleges... No, that's a fair argument, that because they were granted it in the past, you know, the attitude of the employer was it's okay. But isn't it also a fair argument that they got tired of it? So it might be, except that the April 21 date is not a date that's pulled out of anything. And the April 21 date is the date of a letter that is attached as an exhibit, Exhibit B, to the COCA affidavit, which is referenced in the First Amendment complaint. The letter that they received was not just a letter to these two individuals. It was a warn letter. The court can actually take judicial notice of the fact that warn letters go out when 500 or, in New York, 250 employees are terminated at the same time. Or, you know, 50 or more employees have been terminated. The declaration and the exhibits, are they properly considered on a 12B6 motion? So one could argue that part of the declaration goes outside. But the declaration that at least admits the letter, the April 21 letter, which is the termination letter referenced in the complaint, is by, I believe, by all decisions that have decided that issue, something that's referenced within the complaint and which the plaintiffs had notice of. And there's no dispute about that. And so you can look at that letter and see that this letter was not a letter sent to these two individuals. It was a letter that was sent to hundreds of people, or to many people. And so when you look at the timing, Your Honor, the case law, the Second Circuit case law on this says that the timing isn't in a vacuum. It's in context. And that's the judge's role in reviewing this. I'm not saying was it possible. Sure, it is possible that all the times that they asked for FMLA leave, and all the times they screened at them, and all the times that they granted the FMLA leaves, and that they knew about their disability, it's possible all those times nothing ever happened to them. They've never been disciplined. They've never been fired. They've never been censured. This time, it's possible that coincidentally, when there is a warranted firing of 21 people as part of a transition of the entire medical school to another entity, this time they were picked. But is that, that's the key difference. And this is where plausibility comes to play. This does not move the ball beyond possibility. And I give you, if I may, Your Honor, another example that they argue, which is they take, they say that there's inconsistent reasons given. They argue, you know, they argue it was inconsistent that they said there was financial problems, and therefore they sold the, so they moved the medical school out of Washington University into this Montefiore Medical Center. And those were, those were different reasons. It is, if you look at the case law on inconsistent reasons, each of those cases are dealing with real inconsistent reasons. At the beginning, the employer said there was no performance issues. The three reasons are arguably consistent. Are they not arguably inconsistent? I mean, should we be resolving whether they are consistent? They're arguably related. I mean, I think they're clearly related, but are they consistent? Are they inconsistent? Isn't that engaging in fact-finding by resolving that question now? I think that's engaging in the analysis of the difference between possibility and plausibility. It's possible, yes. It's possible that these are inconsistent. But, you know, if I said to my son, you know, you can't have a peanut butter and jelly sandwich today because I've just been too busy at work and I haven't had a chance to go to the store, and so we don't have any peanut butter and jelly, and he were to turn around to me and say, huh, it's inconsistent. First you say it's because you're too busy. And then you say it's because you never got a chance to go to the store. And now you're saying we just don't have it. That's what's happening here. We're trying to move, and the point of all of this, the point of Iqbal and the point of Toowoomba is to say we want plaintiffs to have their right in court. We want them to be able to make an allegation that they can go and then prove. But we don't want to open the floodgates to anything that can be removed possibly. Let me ask you another question. You argue in your brief that the standard for FMLA retaliation is but-for causation. There may be some disagreement on that issue. To what extent, it's not clear to me what standard the district court applied. I mean, did the district court apply but-for causation or a motivating factor causation test? I don't think the court rendered a decision on that point because I think the court found that under either circumstance, the plausibility standard had not been met. Was it that issue briefed, precisely what the standard is? That issue was briefed below. And it's been briefed here again. And in the case law side in our brief, the plaintiff doesn't really dispute it. It assumes that it's but-for causation. And I think the plaintiff's argument is based upon the most recent case law that's cited in our briefs that have compared the FMLA retaliation claim, retaliation portion of the FMLA to the retaliation portion of Title VII, which has been found to be a but-for standard. But I think that under either standard that you apply, the issue here is that what's in this complaint is trying to tell the judge, look here, but don't look here, and don't look here, and don't look here, and don't look here, even though all those facts are pled in the complaint, when they got there, how long they've been-they've been asking getting FMLA leaves, the fact that there were other people, this is a Warren Act termination, not an individual termination, not like any of the cases of Vega, Little John, or other things where it's one person focused on that person who made a complaint or took FMLA leave and then suddenly was terminated. Thank you, Your Honor. Thank you. We'll hear the rebuttal. Let us remember the standards set forth in Little John about what it takes to survive Rule 12. It is a plaintiff-friendly standard at this point, minimal support for the diminished obligations under McDonnell-Douglas, and we have that here. I mean, this argument today sounds like a summary judgment argument. You know, the plaintiff says this, but what about all of this? Well, all of this is not really conceded in the complaint. There are arguments that have to await discovery, and, you know, particularly with respect to the reduction in force, because the complaint doesn't provide anything that compels a finding as a matter of law. How about the argument that the complaint incorporates the warn letter by reference? The warn letter is not addressed to the plaintiffs in the complaint. It's a form letter, and the amended complaint doesn't incorporate the warn letter, but even if there's a warn letter, we still have timing, we still have disability-related hostility from management, we still have disparate treatment, we still have the bumping rights, which they were denied. So even if there's a warn letter, there's still a claim for retaliation. Even if there's a warn letter, we probably survive summary judgment based on everything we've been talking about today. Now, the but-for motivating factor distinction probably doesn't work well on the Rule 12. I think this court in Kwan said it doesn't really work well in a summary judgment motion. And so how can it really work? How can we really apply it on the Rule 12? It's such a fine distinction between the two. For these reasons, this court should reverse on both claims, the family medical leave and the city law disability claim. Thank you. Thank you. We'll reserve decision. That completes the arguments for today. Accordingly, I'll ask the clerk to adjourn.